**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

In re <u>Mishti Holdings LLC, *et al*</u>.  Case No. <u> 19-11813 (CSS)          </u>
      Debtor

**INITIAL MONTHLY OPERATING REPORT**
**File report and attachments with Court and submit copy to United States Trustee within 15 days after order for relief.**

Certificates of insurance must name United States Trustee as a party to be notified in the event of policy cancellation.
Bank accounts and checks must bear the name of the debtor, the case number, and the designation "Debtor in Possession."
Examples of acceptable evidence of Debtor in Possession Bank accounts include voided checks, copy of bank deposit
agreement/certificate of authority, signature card, and/or corporate checking resolution.

| REQUIRED DOCUMENTS | Document Attached | Explanation Attached |
|---|---|---|
| **12-Month Cash Flow Projection  (Form IR-1)** | | DIP Budget |
| **Certificates of Insurance:** | | |
|    Workers Compensation | X | |
|    Property | X | |
|    General Liability | X | |
|    Vehicle | X | |
|    Other:_ | | |
|    Identify areas of self-insurance w/liability caps | | |
| **Evidence of Debtor in Possession Bank Accounts** | | |
|    Tax Escrow Account | N/A | |
|    General Operating Account | N/A | |
|    Money Market Account pursuant to Local Rule 4001-3 for the | N/A | |
|    District of Delaware <u>only</u>.  Refer to: | | |
|    http://www.deb.uscourts.gov/ | | |
|    Other: <u>Cash Management Order</u> | X | |
| **Retainers Paid (Form IR-2)** | X | |
| | | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that this report and the documents attached
are true and correct to the best of my knowledge and belief.

_____                _____
Signature of Debtor                                                                            Date


_____                _____
Signature of Joint Debtor                                                                     Date


 <u>/s/ Jeff Nerland                                        </u>                <u>August 29, 2019                   </u>
Signature of Authorized Individual*                                         Date


 <u>Jeff Nerland                                           </u>                <u>Chief Restructuring Officer      </u>
Printed Name of Authorized Individual                              Title of Authorized Individual

*Authorized individual must be an officer, director or shareholder if debtor is a corporation; a partner if debtor
is a partnership; a manager or member if debtor is a limited liability company.

FORM IR
(4/07)

Mishti Holdings LLC
Debtor-in-possession budget
*$000 unless otherwise indicated*

**Lolli & Pops 13 Week Cash Forecast**
06/03/19

| | Scenario | Projection | Projection | Projection | Projection | Projection | Projection | Projection | Projection | Projection | Projection | Projection | Projection | Projection | Projection |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Fiscal Year | 2019 | 2019 | 2019 | 2019 | 2019 | 2019 | 2019 | 2019 | 2019 | 2019 | 2019 | 2019 | 2019 | 2019 |
| | Fiscal Month | Aug | Aug | Aug | Sep | Sep | Sep | Sep | Sep | Sep | Oct | Oct | Oct | Oct | Nov |
| | FW of Yr. | Wk 15 | Wk 16 | Wk 17 | Wk 18 | Wk 19 | Wk 20 | Wk 21 | Wk 22 | Wk 23 | Wk 24 | Wk 25 | Wk 26 | Wk 27 | |
| | FW of Mo. | Wk 2 | Wk 3 | Wk 4 | Wk 1 | Wk 2 | Wk 3 | Wk 4 | Wk 5 | Wk 1 | Wk 2 | Wk 3 | Wk 4 | Wk 1 | |
| | Week of Cash Flow Proj. | Wk 1 | Wk 2 | Wk 3 | Wk 4 | Wk 5 | Wk 6 | Wk 7 | Wk 8 | Wk 9 | Wk 10 | Wk 11 | Wk 12 | Wk 13 | |
| | Fiscal Week End | 8/17/19 | 8/24/19 | 8/31/19 | 9/7/19 | 9/14/19 | 9/21/19 | 9/28/19 | 10/5/19 | 10/12/19 | 10/19/19 | 10/26/19 | 11/2/19 | 11/9/19 | 13 Weeks |
| **Sales** | | | | | | | | | | | | | | | |
| Store Sales | | 699,831 | 986,992 | 986,992 | 894,072 | 894,072 | 894,072 | 894,072 | 894,072 | 916,804 | 916,804 | 916,804 | 916,804 | 854,055 | 11,665,447 |
| **Total Sales** | | **699,831** | **986,992** | **986,992** | **894,072** | **894,072** | **894,072** | **894,072** | **894,072** | **916,804** | **916,804** | **916,804** | **916,804** | **854,055** | **11,665,447** |
| **Receipts** | | | | | | | | | | | | | | | |
| Cash Receipts- Bank | | 452,931 | 1,004,862 | 1,028,939 | 988,739 | 932,070 | 932,070 | 932,070 | 932,070 | 941,905 | 955,768 | 955,768 | 955,768 | 928,621 | 11,012,962 |
| Sales Tax | | 16,874 | 40,966 | 41,947 | 40,308 | 37,998 | 37,998 | 37,998 | 37,998 | 38,399 | 38,964 | 38,964 | 38,964 | 37,857 | 485,237 |
| Store Cash Receipts | | 436,056 | 963,897 | 986,992 | 948,430 | 894,072 | 894,072 | 894,072 | 894,072 | 903,506 | 916,804 | 916,804 | 916,804 | 890,763 | 11,456,346 |
| Wholesale Cash Receipts | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other (Sublease Income) | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Operating Receipts | | 436,056 | 963,897 | 986,992 | 948,430 | 894,072 | 894,072 | 894,072 | 894,072 | 903,506 | 916,804 | 916,804 | 916,804 | 890,763 | 11,456,346 |
| **Operating Disbursements | Merchandise** | | | | | | | | | | | | | | | |
| Inventory | | 525,866 | 493,256 | 325,866 | 301,102 | 301,102 | 301,102 | 301,102 | 301,102 | 529,966 | 529,966 | 529,966 | 529,966 | 378,086 | 5,348,449 |
| Packaging | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Inventory Purchases (COGS) | | 525,866 | 493,256 | 325,866 | 301,102 | 301,102 | 301,102 | 301,102 | 301,102 | 529,966 | 529,966 | 529,966 | 529,966 | 378,086 | 5,348,449 |
| **Net Cash After Inventory Purchases** | | **(89,810)** | **470,641** | **661,126** | **647,328** | **592,970** | **592,970** | **592,970** | **592,970** | **373,540** | **386,839** | **386,839** | **386,839** | **512,677** | **6,107,897** |
| **Operating Costs** | | | | | | | | | | | | | | | |
| Payroll | | 192,777 | 4,537 | 663,826 | 3,629 | 631,628 | 3,629 | 631,628 | 81,611 | 582,370 | 4,537 | 582,370 | 72,283 | 636,552 | 4,091,378 |
| Insurance | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Opex | | 39,889 | 98,250 | 48,250 | 91,338 | 91,338 | 91,338 | 91,338 | 91,338 | 94,828 | 94,828 | 94,828 | 94,828 | 92,118 | 1,114,510 |
| Credit Card | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Rent | | - | - | - | 1,116,164 | - | - | - | 1,116,164 | - | - | - | 1,132,843 | - | 3,365,171 |
| Total Operating Costs | | 232,666 | 102,787 | 712,076 | 1,211,131 | 722,966 | 94,967 | 722,966 | 1,289,113 | 677,198 | 99,365 | 677,198 | 1,299,955 | 728,670 | 8,571,059 |
| **Net Cash Flow After Operations** | | **(322,476)** | **367,854** | **(50,950)** | **(563,803)** | **(129,997)** | **498,002** | **(129,997)** | **(696,143)** | **(303,658)** | **287,474** | **(290,360)** | **(913,116)** | **(215,993)** | **(2,463,162)** |
| **Non-Operating Disbursements** | | | | | | | | | | | | | | | |
| Professional Fees | | - | - | - | - | 91,000 | - | - | - | 75,000 | 546,000 | - | - | - | 712,000 |
| Claims | | - | - | - | - | - | 100,000 | - | - | - | - | 50,000 | - | - | 150,000 |
| UCC | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| DIP Loan Financing | | - | - | - | - | - | - | - | 1,879 | - | - | - | 16,963 | - | 18,842 |
| Total Non-Operating Disbursements | | - | - | - | - | 91,000 | 100,000 | - | 1,879 | 75,000 | 546,000 | 50,000 | 16,963 | - | 880,842 |
| **Net Cash After Non-Operating Costs** | | **(322,476)** | **367,854** | **(50,950)** | **(563,803)** | **(220,997)** | **398,002** | **(129,997)** | **(698,022)** | **(378,658)** | **(258,526)** | **(340,360)** | **(930,079)** | **(215,993)** | **(3,344,005)** |
| **Real Estate (Store Open & TA)** | | | | | | | | | | | | | | | |
| Construction | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Tenant Allowance - FY17 (Katerra) | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Tenant Allowance - FY18 + pipeline | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Net Real Estate Disbursements & (Receipts) | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Loan | | - | - | - | 350,000 | - | - | - | 1,200,000 | - | - | 1,500,000 | - | - | 3,050,000 |
| Loan Payment | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Net Loan Disbursements & (Receipts) | | - | - | - | 350,000 | - | - | - | 1,200,000 | - | - | 1,500,000 | - | - | 3,050,000 |
| **Pass-Throughs** | | | | | | | | | | | | | | | |
| Sales Tax Collected | | 16,874 | 40,966 | 41,947 | 40,308 | 37,998 | 37,998 | 37,998 | 37,998 | 38,399 | 38,964 | 38,964 | 38,964 | 37,857 | 485,237 |
| Sales Tax Disbursed | | 178,385 | - | - | - | - | 158,252 | - | - | - | - | 192,323 | - | - | 528,960 |
| Total Pass-Throughs | | (161,511) | 40,966 | 41,947 | 40,308 | 37,998 | (120,254) | 37,998 | 37,998 | 38,399 | 38,964 | (153,359) | 38,964 | 37,857 | (43,723) |
| **Net Cash Flow** | | **(483,986)** | **408,820** | **(9,003)** | **(173,495)** | **(182,998)** | **277,749** | **(91,998)** | **539,976** | **(340,259)** | **(219,562)** | **1,006,281** | **(891,115)** | **(178,136)** | **(337,728)** |
| Beginning Book Cash Balance | | 608,472 | 124,486 | 533,306 | 524,303 | 350,808 | 167,810 | 445,559 | 353,560 | 893,536 | 553,277 | 333,715 | 1,339,996 | 448,881 | 608,472 |
| Change in Cash Balance | | (483,986) | 408,820 | (9,003) | (173,495) | (182,998) | 277,749 | (91,998) | 539,976 | (340,259) | (219,562) | 1,006,281 | (891,115) | (178,136) | (337,728) |
| **Ending Book Cash Balance** | | **124,486** | **533,306** | **524,303** | **350,808** | **167,810** | **445,559** | **353,560** | **893,536** | **553,277** | **333,715** | **1,339,996** | **448,881** | **270,745** | **270,745** |



# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY):** 8/29/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

**IMPORTANT:** If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

**PRODUCER**
(WC) Heffernan Insurance Brokers
1350 Carlback Avenue
Walnut Creek CA 94596

**CONTACT NAME:** Judy Fenz
**PHONE (A/C, No, Ext):** 925-934-8500
**FAX (A/C, No):** 925-934-8278
**E-MAIL ADDRESS:** judyf@heffins.com

| INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER A: Travelers Property Casualty Company of America | 25674 |
| INSURER B: The Travelers Indemnity Company of Connecticut | 25682 |
| INSURER C: | |
| INSURER D: | |
| INSURER E: | |
| INSURER F: | |

**INSURED:** LOLLAND-01
Meetha Ventures LLC
dba: Lolli and Pops Inc. and dba: Candyopolis
111 Ellis Street
San Francisco CA 94102

## COVERAGES    CERTIFICATE NUMBER: 2037692511    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY ☐ CLAIMS-MADE  X OCCUR  X Total Policy  ☐ Aggregate $10MM | | | Y6307H093732TIL18 | 11/5/2018 | 11/5/2019 | EACH OCCURRENCE | $1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $300,000 |
| | | | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: ☐ POLICY ☐ PROJECT ☐ LOC  X OTHER: Designated Loc. | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | | | | | | | Location on File | $ |
| B | AUTOMOBILE LIABILITY  X ANY AUTO  ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS  ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | BA7H09373218CAG | 11/5/2018 | 11/5/2019 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | X UMBRELLA LIAB  X OCCUR  ☐ EXCESS LIAB  ☐ CLAIMS-MADE  ☐ DED  X RETENTION $ 0 | | | CUP7H22255818 | 11/5/2018 | 11/5/2019 | EACH OCCURRENCE | $4,000,000 |
| | | | | | | | AGGREGATE | $4,000,000 |
| | | | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY   Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | UB7H11794318 | 11/5/2018 | 11/5/2019 | X PER STATUTE   ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $1,000,000 |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES** (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

**CERTIFICATE HOLDER**

U.S. Trustee
Office of the United States Trustee
844 King Street, Suite 2207
Lockbox #35
Wimington DE 19801

**CANCELLATION**

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

**AUTHORIZED REPRESENTATIVE**

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)    The ACORD name and logo are registered marks of ACORD

POLICY NUMBER: Y6307H093732TIL18

COMMERCIAL GENERAL LIABILITY
ISSUE DATE:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# TOTAL AGGREGATE LIMIT AND DESIGNATED LOCATION AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

The Limits of Insurance shown in the Declarations are deleted and replaced by the following:

**LIMITS OF INSURANCE**

| | |
|---|---|
| **Total Aggregate Limit** (Other Than Products-Completed Operations) | $10,000,000 |
| **Designated Location Aggregate Limit** (Other Than Products-Completed Operations) | $2,000,000 |
| **General Aggregate Limit** (Other Than Products-Completed Operations) | $2,000,000 |
| **Products-Completed Operations Aggregate Limit** | $2,000,000 |
| **Personal & Advertising Injury Limit** | $1,000,000 |
| **Each Occurrence Limit** | $1,000,000 |
| **Damage To Premises Rented to You Limit** | $100,000 Any One Premises |
| **Medical Expense Limit** | $5,000 Any One Person |

**List of Designated Locations:**

ALL LOCATIONS PER LOCATION SCHEDULE FORM IL T0 03 04 96

**PROVISIONS**

SECTION III – Limits Of Insurance is deleted in its entirety and replaced by the following:

1. a. The Limits of Insurance shown in the Schedule above and the rules below fix the most we will pay regardless of the number of:

    (1) Insureds;

    (2) Claims made or "suits" brought;

    (3) Persons or organizations making claims or bringing "suits"; or

    (4) Designated "locations" shown in the Schedule above.

  b. The Total Aggregate Limit shown in the Schedule above is the most we will pay for the sum of all amounts under the Designated Location Aggregate Limit and all amounts under the General Aggregate Limit. This includes:

    (1) Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

COMMERCIAL GENERAL LIABILITY

    (2) Damages under Coverage **B**; and

    (3) Medical expenses under Coverage **C**.

  c. Subject to the Total Aggregate Limit shown in the Schedule above and described in b. above, a Designated Location Aggregate Limit is provided and is also shown in the Schedule above. The Designated Location Aggregate Limit is subject to all of the following provisions:

    (1) The Designated Location Aggregate Limit is the most we will pay for the sum of:

      (a) Damages under Coverage **A** because of "bodily injury" and "property damage" caused by "occurrences" and

      (b) Medical expenses under Coverage **C** for "bodily injury" caused by accidents;

    which can be attributed only to operations at a single designated "location" shown in the Schedule above.

    (2) The Designated Location Aggregate Limit applies separately to each designated "location".

    (3) The Designated Location Aggregate Limit does not apply to damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard." Instead, the Products-Completed Operations Aggregate Limit shown in the Schedule above and described in 3. below applies to such damages.

    (4) The Designated Location Aggregate Limit does not apply to damages under Coverage **B**. Instead, the General Aggregate Limit shown in the Schedule above and described in 2. below applies to such damages.

    (5) Any payments made for damages or medical expenses to which the Designated Location Aggregate Limit applies shall reduce both the Total Aggregate Limit shown in the Schedule above and the Designated Location Aggregate Limit for that designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Schedule above and described in 2. below, nor shall they reduce the Designated Location Aggregate Limit for any other designated "location" shown in the Schedule above.

2. Subject to the Total Aggregate Limit shown in the Schedule above and described in 1.b. above, a General Aggregate Limit is provided and is also shown in the Schedule above. The General Aggregate Limit is subject to all of the following provisions:

  a. The General Aggregate Limit is the most we will pay for the sum of:

    (1) Damages under Coverage **A** because of "bodily injury" and "property damage" caused by "occurrences", and medical expenses under Coverage **C** for "bodily injury" caused by accidents, which cannot be attributed only to operations at a single designated "location" shown in the Schedule above; and

    (2) Damages under Coverage **B**.

  b. The General Aggregate Limit does not apply to damages for "bodily injury" or "property damage" included in the "products-completed operations hazard." Instead, the Products-Completed Operations Aggregate Limit shown in the Schedule above and described in 3. below applies to such damages.

  c. Any payments made for damages or medical expenses to which the General Aggregate Limit applies shall reduce both the Total Aggregate Limit shown in the Schedule above and the General Aggregate Limit shown in the Schedule above. Such payments shall not reduce the Designated Location Aggregate Limit for any designated "location" shown in the Schedule above.

3. If coverage for liability arising out of the "products-completed operations hazard" is provided, the Products-Completed Operations Aggregate Limit shown in the Schedule above is the most we will pay under Coverage **A** for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard". Any payments made for such damages shall reduce the Products-Completed Operations Aggregate Limit shown in the Schedule above. Such payments shall not reduce the Total Aggregate Limit shown in the Schedule above, the General Aggregate Limit shown in the Schedule above or the Designated Location Aggregate Limit for any designated "location" shown in the Schedule above.

4. Subject to the Total Aggregate Limit and the General Aggregate Limit shown in the Schedule above and described in 1.b. and 2. above, the Personal and Advertising Injury Limit is the most

COMMERCIAL GENERAL LIABILITY

we will pay under Coverage **B** for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to the Total Aggregate Limit and either the Designated Location Aggregate Limit or the General Aggregate Limit, or subject to the Products-Completed Operations Aggregate Limit, shown in the Schedule above and described in 1. b., 1.c., 2. and 3. above, whichever apply or applies, the Each Occurrence Limit is the most we will pay for the sum of:

    a.  Damages under Coverage **A**; and

    b.  Medical expenses under Coverage **C**

    because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to the Each Occurrence Limit shown in the Schedule above and described in 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to the Each Occurrence Limit shown in the Schedule above and described in 5. above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

8. For the purposes of this endorsement, the Definitions Section is amended by the addition of the following definition:

    "Location" means any premises owned by or rented to you shown in the Schedule above. For the purposes of determining the applicable aggregate limit of insurance, each "location" that includes a premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway or waterway, or by a right-of-way of a railroad, shall be considered a single "location".

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Mishti Holdings LLC, *et al.*, | Case No. 1911813 (CSS) |
| Debtors.[1] | Jointly Administered |
| | Re: D.I. 5 |

**INTERIM ORDER (I) AUTHORIZING CONTINUED USE OF CASH MANAGEMENT SYSTEM, (II) AUTHORIZING USE OF PREPETITION BANK ACCOUNTS, ACCOUNT CONTROL AGREEMENTS, AND PAYMENT METHODS, (III) AUTHORIZING USE OF EXISTING BUSINESS FORMS, (IV) AUTHORIZING CONTINUATION OF ORDINARY COURSE INTERCOMPANY TRANSACTIONS, (V) GRANTING ADMINISTRATIVE PRIORITY TO POSTPETITION INTERCOMPANY CLAIMS, (VI) EXTENDING TIME TO COMPLY WITH THE REQUIREMENTS OF 11 U.S.C. § 345(b), (VII) SCHEDULING A FINAL HEARING, AND (VIII) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order") pursuant to 105, 345, 363, 1107, and 1108 of the Bankruptcy Code, Bankruptcy Rules 2015, 6003 and 6004, and Local Rules 2015-2 and 9013-1(m): (i) authorizing the Debtors to continue to utilize their prepetition cash management system, including by authorizing the Debtors' banks to honor certain transfers and charge certain fees and other amounts; (ii) authorizing use of prepetition bank accounts, account control agreements, and payment methods; (iii) authorizing the Debtors to maintain and continue to use their existing business forms; (iv) authorizing the Debtors to continue ordinary course intercompany transactions; (v) granting administrative priority to postpetition intercompany claims; (vi) extending the Debtors' time to comply with the

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal EIN, are as follows: Mishti Holdings LLC (1193); Lolli and Pops, Inc. (1938); and Meetha Ventures LLC (3065). The Debtors' mailing address is 111 Ellis Street, Floor 5, San Francisco, California 94102.

[2] Capitalized terms used but not defined herein are defined in the Motion.

requirements of section 345(b) of the Bankruptcy Code; (vii) scheduling the Final Hearing to consider entry of the Proposed Final Order, to the extent necessary; and (viii) granting related relief, all as more fully described in the Motion; and upon consideration of the Nerland Declaration; and due and sufficient notice of the Motion having been given under the circumstances; and it appearing that no other or further notice need be provided under the circumstances; and it appearing that the relief requested by this Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED on an interim basis as set forth herein.

2. The Final Hearing on the Motion will be held on __9/5__, 2019, at __11:00 am__ (prevailing Eastern time). Objections or responses, if any, to the entry of a final order on the Motion shall be filed no later than 4:00 p.m. (prevailing Eastern time) on __8/28__, 2019 (the "Objection Deadline) and served so as to be received by the Objection Deadline on proposed counsel to the Debtors, (i) Theodora Oringher PC, 535 Anton Blvd, Ninth Floor, Costa Mesa, CA 92626-7109, Attn: Eric J. Fromme (efromme@tocounsel.com) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware, 19899-1347, Attn: Derek C. Abbott (dabbott@mnat.com), Matthew B. Harvey (mharvey@mnat.com), and Joseph C. Barsalona II (jbarsalona@mnat.com).

3. The Debtors are authorized but not directed to continue to use the Cash Management System, including the Bank Accounts, in the ordinary course of business and to

implement any changes to the Cash Management System as the Debtors deem necessary or appropriate.

4. The Debtors are further authorized but not directed to: (i) continue to use, with the same account numbers, the Bank Accounts in existence on the Petition Date, and need not comply with certain guidelines relating to bank accounts set forth in the U.S. Trustee Operating Guidelines, including, without limitation, the requirement to establish separate accounts for cash collateral and/or tax payments, (ii) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; and (iii) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including, without limitation, by check, wire transfer and other methods; (iv) pay the Bank Fees, including, without limitation, any undisputed Bank Fees regardless of whether such Bank Fees arose before, on or after the Petition Date; and (v) otherwise perform their obligations under the documents governing the Bank Accounts.

5. The Debtors are authorized, but not directed, to honor and pay all undisputed prepetition Service Charges, including Bank Fees and Credit Card Fees, in an amount not to exceed $100,000, and the Banks and Credit Card Processors are hereby authorized to debit, charge or deduct, as applicable, such undisputed amounts in the ordinary course of business.

6. The Debtors are authorized to use, in their present form, all Business Forms and other documents related to the Bank Accounts, without reference to their status as debtors in possession, provided, however, that if the Debtors exhaust their existing check stock during the pendency of these chapter 11 cases, the Debtors will order checks with a notation indicating the designation "debtor in possession" and the lead case number of these cases, provided further, that with respect to checks and other Business Forms which the Debtors or their

agents print themselves, the Debtors or their agents shall begin printing "debtor in possession" or "DIP" and the case number for these chapter 11 cases on such items within ten (10) days of the date of the entry of this Interim Order.

7.  The Debtors are authorized to open new bank accounts or close any Bank Accounts as they may deem necessary and appropriate in their sole discretion without further order of this Court; provided, however, that the Debtors shall provide the U.S. Trustee and counsel to any official committee appointed in these cases notice of the opening of any new bank accounts or closing of any Bank Account (which notice may be provided in the form notation on the Debtors' monthly operating report); and provided further, to the extent the Debtors open a new bank account, the Debtors shall open such new bank account(s) at a bank that has executed a Uniform Depository Agreement with the U.S. Trustee, or at a bank that is willing to immediately execute such an agreement.

8.  Except as otherwise expressly provided in this Interim Order, the Banks are authorized to: (i) continue to maintain, service and administer the Bank Accounts as accounts of the Debtors as debtors in possession and provide related treasury, account and cash management services, all without interruption and in the ordinary course of business; (ii) receive, process, honor and pay, to the extent of available funds, any and all checks, drafts, EFT (including wires or ACH transfers), credit card payments and other items presented, issued or drawn on the Bank Accounts; provided, however, that any check, draft or other notification that the Debtors advise the Banks to have been drawn, issued or otherwise presented before the Petition Date may be honored by the Banks only to the extent authorized by order of the Court; (iii) accept and honor all representations from the Debtors as to which checks, drafts, EFT (including wires or ACH transfers), credit card payments and other items presented, issued or

drawn should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, EFT (including wires or ACH transfers), credit card payments and other items are dated before or after the Petition Date; and (iv) debit or charge the Bank Accounts for all undisputed Bank Fees, whether arising before, on or after the Petition Date.

9. Subject to the terms of this Interim Order, the Banks may rely upon the representations of the Debtors with respect to whether any disbursement should be honored pursuant to any order of this Court, whether or not such disbursements are dated before, on or after the Petition Date, and no Bank that honors a prepetition disbursement that is the subject of this Interim Order (i) at the direction of the Debtors or (ii) in the good-faith belief that this Court has authorized such Disbursement to be honored shall or shall be deemed to have any liability to the Debtors or their estates on account of such disbursement being honored postpetition, or otherwise be deemed to be in violation of this Interim Order.

10. The Debtors are authorized but not directed to continue performing Intercompany Transactions in the ordinary course of business on a postpetition basis. All Intercompany Claims arising after the Petition Date shall be identified as such and accorded administrative expense priority in accordance with sections 364(b), 503(b) and 507(a)(2) of the Bankruptcy Code.

11. In connection with the ongoing utilization of the Cash Management System, the Debtors shall continue to maintain records with respect to all transfers of cash in the ordinary course so that all transactions (including Intercompany Transactions) may be readily ascertained, traced, recorded properly, and distinguished between prepetition and postpetition transactions and shall make such records available to the U.S. Trustee upon request.

12. The Debtors shall have 30 days from the date of this Interim Order to comply with the requirements of section 345(b) of the Bankruptcy Code, to the extent applicable, without prejudice to the Debtors' rights to seek a further extension of time or to seek to deviate from the requirements of section 345(b) of the Bankruptcy Code on a further interim or a final basis.

13. For Banks at which the Debtors hold Bank Accounts that are party to a Uniform Depository Agreement with the U.S. Trustee, within 15 days of the date of entry of this Interim Order, the Debtors shall (i) contact each Bank, (ii) provide the Bank with each of the Debtors' employer identification numbers and (iii) identify each of their Bank Accounts held at such Banks as being held by a debtor in possession in a bankruptcy case.

14. For Banks at which the Debtors hold accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall use their good-faith efforts to cause the Banks to execute a Uniform Depository Agreement in a form prescribed by the Office of the United States Trustee within 45 days of the Petition Date. The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a uniform depository agreement in a form prescribed by the U.S. Trustee are fully reserved.

15. Absent further order of this Court, the Debtors shall not make any transfers of cash or property to any of their non-Debtor affiliates.

16. This Interim Order shall apply to any and all Bank Accounts actually in, or linked to, the Cash Management System, even if such Bank Accounts do not appear on the list attached as **Exhibit 1** to this Interim Order. Any and all accounts opened by the Debtors on or after the Petition Date at any Bank shall be deemed a Bank Account (as if it had been opened

prior to the Petition Date and listed on **Exhibit 1**) and any and all Banks at which such accounts are opened shall similarly be subject to the rights and obligations of this Interim Order.

17. Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity pays those disbursements.

18. As soon as practicable after entry of this Interim Order, the Debtors shall serve a copy of this Interim Order on the Banks.

19. The Debtors are authorized to take, or cause to be taken, all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

20. Notwithstanding anything in this order to the contrary, the relief granted herein shall be subject to the orders authorizing postpetition financing and any applicable budget thereunder.

21. The requirements set forth in Bankruptcy Rule 6003 are satisfied by the contents of the Motion.

22. The requirement of Bankruptcy Rule 6004(a) is waived.

23. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, this Interim Order shall be immediately effective and enforceable upon its entry.

24.  The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Interim Order.

Date: _____8/14_____, 2019
Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
CHIEF UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

Debtors' Bank Accounts

| | Bank Name | Account Holder | Last Four Digits of Account # | Account Type/Purpose |
|---|---|---|---|---|
| 1. | Bank of America | Meetha Ventures LLC | 7254 | Store: Lawton #51 |
| 2. | Bank of America | Meetha Ventures LLC | 9276 | Store: Norman/Sooner #52 |
| 3. | Bank of America | Meetha Ventures LLC | 7432 | Store: Wichita East #53 |
| 4. | Bank of America | Meetha Ventures LLC | 7429 | Store: Wichita West #54 |
| 5. | Bank of America | Meetha Ventures LLC | 7380 | Store: Topeka #55 |
| 6. | Bank of America | Meetha Ventures LLC | 7377 | Store: Salina - #56 |
| 7. | Bank of America | Meetha Ventures LLC | 7225 | Store: Quail #58 |
| 8. | Bank of America | Meetha Ventures LLC | 7676 | Store: Tulsa #101 |
| 9. | Bank of America | Meetha Ventures LLC | 8808 | Store: Penn #102 |
| 10. | Bank of America | Meetha Ventures LLC | 9506 | Store: Chicago, IL #103 |
| 11. | Bank of America | Meetha Ventures LLC | 9519 | Store: Roseville, CA #104 |
| 12. | Bank of America | Meetha Ventures LLC | 7521 | Store: Glendale #105 |
| 13. | Bank of America | Meetha Ventures LLC | 7534 | Store: Stonebriar #106 |
| 14. | Bank of America | Meetha Ventures LLC | 8742 | Store: Tyson's Corner #108 |
| 15. | Bank of America | Meetha Ventures LLC | 8768 | Store: Alderwood #109 |
| 16. | Bank of America | Meetha Ventures LLC | 8755 | Store: Annapolis Mall #110 |
| 17. | Bank of America | Meetha Ventures LLC | 9356 | Store: French Market, IL #111 |
| 18. | Bank of America | Meetha Ventures LLC | 7059 | Store: Woodlands-Houston #1112 |
| 19. | Bank of America | Meetha Ventures LLC | 4375 | Store: Topanga #1115 |
| 20. | Bank of America | Meetha Ventures LLC | 4320 | Store: Sherman Oaks #1116 |
| 21. | Bank of America | Meetha Ventures LLC | 3328 | Store: Washington Sq - Tigard #1118 |
| 22. | Bank of America | Meetha Ventures LLC | 4333 | Store: Thousand Oaks #1119 |
| 23. | Bank of America | Meetha Ventures LLC | 3315 | Store: South Center #1120 |
| 24. | Bank of America | Meetha Ventures LLC | 7897 | Store: Natick #1121 |
| 25. | Bank of America | Meetha Ventures LLC | 0595 | Store: Oakridge Mall #1123 |

| 26. | Bank of America | Meetha Ventures LLC | 0582 | Store: Los Gatos #1126 |
|---|---|---|---|---|
| 27. | Bank of America | Meetha Ventures LLC | 1154 | Store: Perimeter Mall #1128 |
| 28. | Bank of America | Meetha Ventures LLC | 1167 | Store: North Point Mall #1129 |
| 29. | Bank of America | Meetha Ventures LLC | 1277 | Store: Battlefield Mall #1132 |
| 30. | Banc First | Meetha Ventures LLC | 5257 | Store: Lawton #51 |
| 31. | Bank VI (Bank Six) | Meetha Ventures LLC | 6608 | Store: Salina #56 |
| 32. | First United Bank | Meetha Ventures LLC | 6295 | Store: Shawnee #60 |
| 33. | First Westroads Bank | Meetha Ventures LLC | 4185 | Store: Westroads #61 |
| 34. | Access Bank | Meetha Ventures LLC | 7510 | Store: Oakview #62 |
| 35. | International Bank of Commerce | Meetha Ventures LLC | 9136 | Store: Tulsa #101 |
| 36. | Wells Fargo | Meetha Ventures LLC | 8262 | Store: Glendale #105 |
| 37. | BBVA Compass | Meetha Ventures LLC | 3523 | Store: La Cantera #107 |
| 38. | Capital One Bank | Meetha Ventures LLC | 7997 | Store: Tyson's Corner #108 |
| 39. | Chase Bank | Meetha Ventures LLC | 2555 | Store: Baton Rouge #1113 |
| 40. | Wells Fargo | Meetha Ventures LLC | 6980 | Store: Park Meadows #1114 |
| 41. | Wells Fargo | Meetha Ventures LLC | 2920 | Store: Montgomery-Bethesda #1117 |
| 42. | Texas Community Bank | Meetha Ventures LLC | 9795 | Store: Memorial City #1122 |
| 43. | Washington Federal | Meetha Ventures LLC | 1561 | Store: Bellevue Square #1124 |
| 44. | Wells Fargo | Meetha Ventures LLC | 0769 | Store: Arden Fair #1125 |
| 45. | Washington Federal | Meetha Ventures LLC | 1645 | Store: Boise Town Square #1127 |
| 46. | TD Bank | Meetha Ventures LLC | 6704 | Store: Garden State Plaza #1130 |
| 47. | Great Southern Bank | Meetha Ventures LLC | 7126 | Store: West County Center #1131 |
| 48. | Chase Bank | Meetha Ventures LLC | 8179 | Store: Mission Viejo #1133 |
| 49. | Wells Fargo | Meetha Ventures LLC | 0261 | Store: King of Prussia #1134 |
| 50. | Wells Fargo | Meetha Ventures LLC | 0071 | Store: Lehigh Valley Mall #1135 |
| 51. | Chase Bank | Meetha Ventures LLC | 7973 | Store: Willowbrook #1137 |
| 52. | Wells Fargo | Meetha Ventures LLC | 0812 | Store: Ridgedale Center #1138 |
| 53. | Wells Fargo | Meetha Ventures LLC | 8247 | Store: Oak Park Mall #1139 |
| 54. | Wells Fargo | Meetha Ventures LLC | 6341 | Store: Coronado Center #1140 |
| 55. | Wells Fargo | Meetha Ventures LLC | 8205 | Store: Fashion Place #1141 |
| 56. | Wells Fargo | Meetha Ventures LLC | 8270 | Store: North Star Mall #1142 |
| 57. | Wells Fargo | Meetha Ventures LLC | 8239 | Store: Mall of Columbia #1143 |

| 58. | Wells Fargo | Meetha Ventures LLC | 8288 | Store: Oakbrook Center #1144 |
|---|---|---|---|---|
| 59. | Wells Fargo | Meetha Ventures LLC | 8213 | Store: Baybrook Mall #1145 |
| 60. | Wells Fargo | Meetha Ventures LLC | 8296 | Store: Park City Center #1146 |
| 61. | Wells Fargo | Meetha Ventures LLC | 8221 | Store: Fashion Show #1147 |
| 62. | Wells Fargo | Meetha Ventures LLC | 0145 | Store: Stonestown Galleria #1149 |
| 63. | Wells Fargo | Meetha Ventures LLC | 0087 | Store: Northridge Fashion Center #1155 |
| 64. | Wells Fargo | Meetha Ventures LLC | 0376 | Store: Jordan Creek Town Center #1156 |
| 65. | Wells Fargo | Meetha Ventures LLC | 0160 | Store: Mall St. Mathews #1158 |
| 66. | Wells Fargo | Meetha Ventures LLC | 0095 | Store: Clackamas Town Center #1159 |
| 67. | Wells Fargo | Meetha Ventures LLC | 0178 | Store: Kenwood Store Center #1162 |
| 68. | Wells Fargo | Meetha Ventures LLC | 9956 | Store: Maine Mall #1166 |
| 69. | Wells Fargo | Meetha Ventures LLC | 9972 | Store: Christiana Mall # 1167 |
| 70. | Wells Fargo | Meetha Ventures LLC | 6767 | Store: May Fair #1168 |
| 71. | Wells Fargo | Meetha Ventures LLC | 9915 | Store: Palm Springs # 1169 |
| 72. | Wells Fargo | Meetha Ventures LLC | 0202 | Store: Twelve Oaks #1170 |
| 73. | Wells Fargo | Meetha Ventures LLC | 0194 | Store: Fair Oaks #1171 |
| 74. | Wells Fargo | Meetha Ventures LLC | 9998 | Store: Cherry Creek #1173 |
| 75. | Wells Fargo | Meetha Ventures LLC | 6759 | Store: Willowbrook (TX) #1176 |
| 76. | Bank of America | Meetha Ventures LLC | 1500 | Corp: Expense Account #1500 |
| 77. | Bank of America | Meetha Ventures LLC | 7861 | Corp: New Deposit #7861 |
| 78. | Bank of America | Meetha Ventures LLC | 8633 | Corp: Reserve #8633 |
| 79. | Bank of America | Meetha Ventures LLC | 8894 | Corp: Powell's #8894 |
| 80. | Bank of America | Meetha Ventures LLC | 7907 | Corp: California (E-Commerce) #7907 |
| 81. | Bank of America | Meetha Ventures LLC | 9217 | Corp: Powell's GC #9217 |
| 82. | Bank of America | Meetha Ventures LLC | 7949 | Corp: Benefits Sink #7949 |
| 83. | Bank of America | Meetha Ventures LLC | 0427 | Corp: Office Sales #0427 |
| 84. | Bank of America | Meetha Ventures LLC | 0760 | Corp: Wholesale #0760 |
| 85. | Bank of America | Meetha Ventures LLC | 0773 | Corp: Gifting #0773 |
| 86. | Bank of America | Meetha Ventures LLC | 1060 | Corp: Commuter Benefits #1060 |
| 87. | Bank of America | Meetha Ventures LLC | 1329 | Corp: MSP Royalty Income #1329 |
| 88. | Bank of America | Meetha Ventures LLC | 1332 | Corp: MSP Inventory Purchase #1332 |
| 89. | First Republic Bank | Lolli and Pops Inc. | 2010 | Corp: Lolli and Pops Inc. |

| 90. | First Republic Bank | Meetha Ventures LLC | 4415 | Corp: Concentration |
| 91. | First Republic Bank | Meetha Ventures LLC | 4431 | Corp: Disbursement |
| 92. | First Republic Bank | Meetha Ventures LLC | 4456 | Corp: Reserve |
| 93. | First Republic Bank | Meetha Ventures LLC | 7863 | Corp: CC Depository |
| 94. | First Republic Bank | Meetha Ventures LLC | 7871 | Corp: Wholesale Depository |
| 95. | First Republic Bank | Meetha Ventures LLC | 7889 | Corp: Misc. Depository |
| 96. | Wells Fargo | Meetha Ventures LLC | 6333 | Corp: Meetha Ventures Collection A/c |

## Exhibit 2

Funds Flow Diagram



SCHEDULE OF RETAINERS PAID TO PROFESSIONALS

| Payee | Check Date | Check Number | Name of Payor | Amount | Amount Applied to Date* | Balance* |
|---|---|---|---|---|---|---|
| Morris, Nichols, Arsht & Tunnell LLP | 8/7/2019 | Wire | Meetha Ventures LLC | $50,000.00 | - | - |
|  | 8/9/2019 | Wire | Meetha Ventures LLC | $200,000.00 | $100,216.85 | $149,783.15 |
| Theodora Oringher PC | 8/1/2019 | Wire | Meetha Ventures LLC | $5,000.00 | - | - |
|  | 8/6/2019 | Wire | Meetha Ventures LLC | $50,000.00 | - | - |
|  | 8/9/2019 | Wire | Meetha Ventures LLC | $200,000.00 | $112,689.70 | $142,310.30 |
| GlassRatner Advisory & Capital Group, LLC | 8/8/2019 | Wire | Meetha Ventures LLC | $25,000.00 | - | - |
|  | 8/9/2019 | Wire | Meetha Ventures LLC | $80,000.00 | $31,126.83 | $73,873.17 |
| Donlin Recano & Company | 8/9/2019 | Wire | Meetha Ventures LLC | $15,000.00 | $0.00 | $15,000.00 |
|  |  |  |  | $625,000.00 | $244,033.38 | $380,966.62 |

*Balances as of the Petition Date