# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>Mishti Holdings LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-11813 (CSS)<br><br>Jointly Administered<br><br>**Objection Deadline**:<br>December 10, 2019, at 4:00 p.m.<br>**Hearing Date**:<br>December 17, 2019, at 10:00 a.m. |

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF COWEN AND COMPANY, LLC, AS THE DEBTORS' INVESTMENT BANKER AND FINANCIAL ADVISOR *NUNC PRO TUNC* TO NOVEMBER 6, 2019

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby apply to the Court as follows:

## RELIEF REQUESTED

1. By this application, the Debtors respectfully request entry of an order, substantially in the form attached as **Exhibit A** (the "Proposed Order"):

    a. authorizing the Debtors to employ and retain Cowen and Company, LLC ("Cowen"), as their investment banker and financial advisor in accordance with the terms and conditions set forth the engagement letter with Cowen, dated November 8, 2019 (the "Engagement Letter"), a copy of which is attached as **Exhibit 1** to the Proposed Order, effective *nunc pro tunc* to November 6, 2019;

    b. approving the terms of Cowen's employment and retention, including the fee and expense structure and the indemnification, contribution, reimbursement and related provisions set forth in the Engagement Letter

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal EIN, are as follows: Mishti Holdings LLC (1193); Lolli and Pops, Inc. (1938); and Meetha Ventures LLC (3065). The Debtors' mailing address is 4 Embarcadero Center, Suite 780, San Francisco, CA 94111.

    c.  waiving certain informational requirements set forth in Local Rule 2016-2; and

    d.  granting such other and further relief as is just and proper.

  2.  In support of this application, the Debtors rely upon and incorporate by reference, (a) the declaration of Lorie R. Beers, a Managing Director of Cowen (the "<u>Beers Declaration</u>"), which is attached as **Exhibit B**, and (b) the *Amended Declaration of Jeff Nerland in Support of First Day Relief* (D.I. 30) (the "<u>First Day Declaration</u>").  In further support of this Application, the Debtors respectfully state as follows:

## **JURISDICTION**

  3.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of these proceedings and this application in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

  4.  The Debtors consent to entry of final orders or judgments by the Court on this application.

  5.  The statutory bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), as supplemented by rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and rules 2014-1 and 2016-2(h) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").

## **BACKGROUND**

  6.  On August 12, 2019 (the "<u>Petition Date</u>"), the Debtors each commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court.  The Debtors' cases are being jointly administered for procedural purposes.  No trustee or examiner has been appointed

in these cases. The Debtors are operating their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7. On August 23, 2019, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") in these cases.

8. The Debtors are owner-operators of retail candy stores located in shopping malls around the country under the Lolli & Pops brand.

9. A full description of the Debtors' business, capital structure and events leading to these chapter 11 cases is set forth in the First Day Declaration.

## BASIS FOR RELIEF

10. The Debtors seek approval of the Engagement Letter (including, without limitation, the Fee and Expense Structure (as defined below) and the indemnification provisions) pursuant to section 328(a) of the Bankruptcy Code.

11. Section 328(a) of the Bankruptcy Code provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. . . ." 11 U.S.C. § 328(a). Section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was

3

> worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (citations omitted), *cited in Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart World Techs. LLC)*, 383 B.R. 869, 874 (S.D.N.Y. 2008). Owing to this inherent uncertainty, courts have approved similar arrangements that contain reasonable terms and conditions under section 328 of the Bankruptcy Code.

12. Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) of the Bankruptcy Code to read as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, *on a fixed or percentage fee basis*, or on a contingent fee basis.

11 U.S.C. § 328(a) (amendment emphasized). This change makes clear that the Debtors are able to retain a professional on a fixed or percentage fee basis, such as the Fee and Expense Structure, with bankruptcy court approval.

13. The terms of the Engagement Letter appropriately account for the nature and scope of services that Cowen will be providing, Cowen's substantial experience providing investment banking and financial advisory services, and the fee and expense structures typically utilized by Cowen and other leading investment bankers that do not bill their clients on an hourly basis.

14. Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases.

15. The Debtors request approval of the employment of Cowen *nunc pro tunc* to November 6, 2019, which is the date Cowen began work. *Nunc pro tunc* relief is warranted in these cases. The Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention. *See Matter of Arkansas Co.*, 798 F.2d 645, 650 (3d Cir. 1986); *see also In re Indian River Homes, Inc.*, 108 B.R. 46, 52 (D. Del. 1989). Given the Debtors' need to have Cowen commence work immediately, the Debtors were not able to seek approval of Cowen's retention before Cowen began work. Nonetheless, the Debtors and Cowen have filed this application promptly after the Engagement Letter was executed. Under these circumstances, no party will be prejudiced, and *nunc pro tunc* retention should be approved.

16. Accordingly, the Debtors believe that Cowen's retention *nunc pro tunc* to November 6, 2019, on the terms and conditions proposed herein is appropriate.

### Cowen's Qualifications

17. In light of the size and complexity of these chapter 11 cases, the Debtors require a qualified and experienced investment banker and financial advisor like Cowen, with the resources, capabilities and experience to assist them in pursuing one or more transactions that are crucial to assure the success of the Debtors' cases.

18. Cowen is a full services brokerage, investment and financial advisory firm involved in a wide range of investment banking and other activities, including without limitation, investment management, corporate financing, and securities issuing, trading, research, and financial advising. Cowen is a subsidiary of the Cowen Group, a public company traded on the NASDAQ with an equity market capitalization of over $550 million as of November 6, 2019 (NASDAQ: COWN). Cowen has a dedicated restructuring investment banking group with extensive experience advising corporations, creditors' committees and other constituents in

complex situations involving underperforming or unsuitably capitalized businesses facing difficult financing conditions, liquidity crises, out-of-court restructurings or bankruptcy cases. Cowen has been involved as advisors with respect to financial restructurings, raising of capital, mergers, acquisitions, divestitures and other advisory assignments. Its financial restructuring professionals apply expert technical, analytical and negotiating skills to structure transactions and resolve situations in which multiple stakeholders frequently have conflicting interests and objectives. Cowen's senior level professionals provide hands-on advice throughout the process from the initial planning of the restructuring strategy through the negotiation and execution of each transaction.

19. Cowen professionals have experience in large and complex bankruptcy cases, representing both debtors and creditor constituencies. Cowen professionals have significant experience in marketing distressed businesses for recapitalization or sale, and have consummated numerous restructuring and distressed sales transactions, including pursuant to section 363 of the Bankruptcy Code. Moreover, Cowen has extensive experience in providing investment banking services in the consumer discretionary and retail sectors. Such experience includes providing general financial advisory services and being involved as advisors with respect to the raising of capital, mergers, acquisitions, and divestitures for companies in these sectors.

20. Accordingly, Cowen is well qualified to and has the necessary background and relevant experience required in order to serve as the Debtors' investment banker and financial advisor in these cases.

**Services to Be Provided by Cowen**

21. Under the Engagement Letter, in consideration for the compensation contemplated thereby, Cowen has provided and has agreed to perform the following services, in each case under the direction of the Debtors:[2]

    a. assist the Debtors in analyzing their business, operations, properties, financial condition and prospects;

    b. assist the Debtors in their analysis and consideration of financing alternatives available to the Debtors;

    c. assist the Debtors in identifying and evaluating parties that may be interested in a Financing,[3] Restructuring,[4] and/or a Sale;[5]

---

[2] The summaries of the Engagement Letter contained in this application are provided for purposes of convenience only. The Engagement Letter controls in the event of any inconsistency between the summaries contained in this application and the terms and provisions of the Engagement Letter. Capitalized terms not otherwise defined herein have the meaning given to them in the Engagement Letter.

[3] Under the Engagement Letter, the term "Financing" means a capital raise by the Debtors and/or one of their affiliated companies, from one or more investors, lenders, or other financing sources (each, an "Investor"), through the issuance, sale and/or placement of newly issued or treasury equity, equity-linked or debt securities, and/or other instruments or obligations of the Debtors with one or more Investors, including, without limitation, a "debtor-in-possession financing" (other than the existing debtor-in-possession financing facility provided to the Company by Paxion Capital Partners and any amendment thereto) or "exit financing" in connection with a case under the United States Bankruptcy Code, a rights offering, or any loan or other financing or obligation.

[4] Under the Engagement Letter, the term "Restructuring" means any restructuring, reorganization (whether or not pursuant to chapter 11 of United States Bankruptcy Code) and/or recapitalization of all or a substantial portion of the Debtors' outstanding indebtedness, liabilities and preferred equity, if any (including, without limitation, bank debt, bond debt, and other on and off balance sheet indebtedness and liabilities) (collectively, the "Existing Obligations") that is achieved, without limitation, through a solicitation of waivers and consents from the holders of Existing Obligations (collectively, the "Stakeholders"); rescheduling of maturities of Existing Obligations; repurchase, settlement or forgiveness of Existing Obligations; conversion of Existing Obligations into equity or debt; an exchange offer involving the issuance of new securities or indebtedness in exchange for Existing Obligations; and/or other material modifications or amendments to the Existing Obligations.

[5] Under the Engagement Letter, the term "Sale" means, whether or not in one transaction, or a series of related transactions: (a) the disposition to one or more third-parties of all or a portion of the issued and outstanding equity securities or any other issued and outstanding securities of the

      d.      advise the Debtors on tactics and strategies for negotiating with potential Investors, potential parties to a Financing, Restructuring, and/or a Sale, and Stakeholders, and if requested by the Debtors, participate in such negotiations;

      e.      assist the Debtors in preparing materials describing the Debtors for distribution and presentation to parties that might be interested in a Financing, Restructuring, and/or a Sale;

      f.      advise the Debtors on the timing, nature and terms of new securities, other consideration or other inducements to be offered pursuant to any Financing and/or Restructuring;

      g.      render financial advice to the Debtors and participate in meetings or negotiations with Stakeholders and/or rating agencies or other appropriate parties in connection with a Financing, Restructuring, and/or a Sale;

      h.      attend meetings of the Debtors' Board of Directors (or similar governing entity) and its committees with respect to matters on which Cowen has been engaged to advise the Debtors;

      i.      provide oral and written testimony, as necessary, with respect to matters on which Cowen has been engaged to advise the Debtors in any proceeding before this Court; and

      j.      render such other financial advisory services as may from time to time be agreed upon by Cowen and the Debtors.

22.      The Debtors believe that Cowen's services will not duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases. Specifically, Cowen will carry out unique functions and will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid the unnecessary duplication of services.

---

Debtors by the existing securityholders of the Debtors, whether or not pursuant to the Bankruptcy Code; (b) an acquisition, merger, consolidation, or other business combination, including a sale pursuant to the Bankruptcy Code, of which all or a portion of the business, assets or existing equity or securities of the Debtors are, directly or indirectly, sold or transferred to, or combined with, a third-party; (c) an acquisition, merger, consolidation, sale, including a sale pursuant to the Bankruptcy Code, or other business combination pursuant to a successful "credit bid"; and/or (d) the formation of a joint venture, partnership or similar entity, or any similar sale transaction.

**Professional Compensation**

23. In consideration of the services to be provided by Cowen, subject to the Court's approval, the Debtors and Cowen have agreed on the proposed compensation set forth in the Engagement Letter (the "Fee and Expense Structure"), which may be summarized in relevant part as follows:

   a. **Monthly Fee**. A fee of U.S. $50,000 (a "Monthly Fee") shall accrue upon execution of the Engagement Letter and upon each monthly anniversary of the Engagement Letter. The accrued Monthly Fees shall be payable upon the consummation of any Restructuring or Sale.

   b. **Financing Fee.** A fee (a "Financing Fee") payable at each closing of a Financing equal to the applicable percentage set forth below of the gross proceeds and/or aggregate principal amount (as applicable) of any Financing irrevocably committed or funded in connection with such Financing (whether or not actually drawn):

   6.0% for equity or equity-linked securities; and

   2.0% for debt.

   c. **Restructuring Fee**. A fee equal to U.S. $500,000 (a "Restructuring Fee") payable upon the consummation of a Restructuring; provided, however, that if a Restructuring is to be completed through a "pre-packaged" or "pre-arranged" plan of reorganization, the Restructuring Fee shall be earned and shall be payable upon the earlier of (i) execution of definitive agreements with respect to such plan and (ii) delivery of binding consents to such plan by a sufficient number of creditors and/or bondholders, as the case may be, to bind the creditors or bondholders, as the case may be, to the plan; provided, further, that in the event that Cowen is paid a fee and a reorganization is not consummated, Cowen shall return such fee to the Debtors (less any Monthly Fees that have accrued).

   d. **Sale Fee**. A fee (a "Sale Fee") payable upon consummation of any Sale, equal to (i) $500,000; plus (ii) 4.0% of the Aggregate Consideration[6]

---

[6] Under the Engagement Letter, the term "Aggregate Consideration" means the total fair market value (determined at the closing of the Sale) of all consideration paid or payable, or otherwise to be distributed to, or received by, directly or indirectly, the Debtors, their bankruptcy estates, their creditors and/or their securityholders in connection with a Sale, including all (i) cash, securities and other property, (ii) debt assumed, satisfied or paid by a purchaser or which remains outstanding at the closing of a Sale (including, without limitation, the amount of any

of such Sale between $9,000,000 and $15,000,000; plus (iii) 5.0% of the Aggregate Consideration of such Sale in excess of $15,000,000.

e. **Crediting**: If the Monthly Fees paid are greater than $150,000 in the aggregate, then any amount paid over $150,000 shall be credited to the Restructuring Fee or the Sale Fee.

f. **Expense Reimbursement**: The Debtors shall, upon request, reimburse Cowen for its documented reasonable out-of-pocket expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and any documented reasonable out-of-pocket expenses for fees and expenses of Cowen's outside counsel, if any.

## The Fee and Expense Structure is Appropriate and Reasonable and Should be Approved under Section 328(a) of the Bankruptcy Code

24. The Debtors believe that the Fee and Expense Structure is comparable to those generally charged by investment bankers of similar stature to Cowen for comparable engagements, both in and out of bankruptcy proceedings, and reflects a balance between a fixed, monthly fee and contingent amounts, which are tied to the consummation and closing of the transactions and services contemplated by the Debtors and Cowen in the Engagement Letter.

25. The Fee and Expense Structure summarized above and described fully in the Engagement Letter is consistent with Cowen's normal and customary billing practices for comparably sized and complex cases and transactions, both in and out-of-court, involving the services to be provided in connection with these chapter 11 cases. Moreover, the Fee and Expense Structure is consistent with and typical of arrangements entered into by Cowen and other investment banks in connection with rendering comparable services to clients such as the

---

indebtedness, securities or other property "credit bid" in any Sale) and any other indebtedness, liabilities, and other obligations, including tax claims, that will actually be paid, satisfied or assumed by a purchaser from the Debtors or the securityholders of the Debtors and (iii) amounts placed in escrow and deferred contingent and installment payments

Debtors. Cowen and the Debtors believe that the Fee and Expense Structure is both reasonable and market-based.

26. To induce Cowen to represent the Debtors, the Fee and Expense Structure was established to reflect the difficulty of the extensive assignments Cowen has undertaken and expects to undertake and to account for the potential for an unfavorable outcome resulting from factors outside of Cowen's control.

27. The Debtors and Cowen negotiated the Fee and Expense Structure to function as an interrelated, integrated unit, in correspondence with Cowen's services, which Cowen renders not in parts, but as a whole. It would be contrary to the intention of Cowen and the Debtors for any isolated component of the Fee and Expense Structure to be treated as sufficient consideration for any isolated portion of Cowen's services. Instead, the Debtors and Cowen intend that Cowen's services be considered as a whole that is to be compensated by the Fee and Expense Structure in its entirety.

28. Cowen's restructuring expertise, as well as its capital markets knowledge, financing skills and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Cowen's engagement under the Engagement Letter, were important factors in determining the Fee and Expense Structure. The ultimate benefit to the Debtors derived from the services provided by Cowen under the Engagement Letter cannot be measured by a reference to the number of hours expended by Cowen's professionals.

29. The Fee and Expense Structure was agreed to in anticipation that a substantial commitment of professional time and effort will be required of Cowen and its professionals and in light of the fact that (i) such commitment may foreclose other opportunities for Cowen and (ii) the actual time and commitment required of Cowen and its professionals to

perform its services may vary substantially from week to week and month to month, creating "peak load" issues for Cowen.

30. Furthermore, the Debtors believe that Cowen's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the Debtors' benefit in pursuing any restructuring, financing or sale, that the value to the Debtors of Cowen's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the deferred fees, including the Restructuring Fee, Financing Fee, and Sale Fee is reasonable regardless of the number of hours to be expended by Cowen's professionals in the performance of the services to be provided hereunder, and that the deferred fees shall not be considered to be "bonuses" or fee enhancement under applicable law.

31. In light of the foregoing and given the numerous issues that Cowen may be required to address in the performance of its services under the Engagement Letter, Cowen's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Cowen's services for engagements of this nature in both the in-court and out-of-court contexts, the Debtors believe that the Fee and Expense Structure is fair and reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

32. Cowen has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code. No promises have been received by Cowen as to compensation in connection with these chapter 11 cases, other than as set forth in the Engagement Letter.

## Record Keeping and Applications for Compensation

33. It is not the general practice of investment banking firms, including Cowen, to keep detailed time records similar to those customarily kept by attorneys and required by Local Rule 2016-2(d). Because Cowen does not ordinarily maintain contemporaneous time records in tenth-hour (.10) increments or provide or conform to a schedule of hourly rates for its professionals, pursuant to Local Rule 2016-2(h), Cowen should be excused from compliance with such requirements and instead should be required to maintain time records in half-hour (0.50) increments, not decimal hours, setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.

34. Cowen will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services. Cowen's applications for compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter, in accordance with any procedures established by the Court.

## Indemnification Provisions

35. Pursuant to the indemnification provisions of the Engagement Letter, the Debtors have agreed, subject to Court approval, to indemnify Cowen, each controlling person and each of their respective directors, officers, employees, agents, affiliates and representatives) and hold each of them harmless against any and all losses, claims, damages, expenses, liabilities, joint or several, arising in any manner out of or in connection with the Engagement Letter, or otherwise in connection with any services rendered by Cowen whether before or after the date of the Engagement Letter, unless it is finally judicially determined that the liabilities resulted primarily from the gross negligence or willful misconduct of Cowen.

36. The Debtors and Cowen believe that the indemnification provisions contained in the Engagement Letter, as modified by the Proposed Order, are customary and reasonable for investment banking engagements, both in and out of court, and reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions.

37. The terms and conditions of the Engagement Letter were negotiated by the Debtors and Cowen at arm's length and in good faith. The Debtors respectfully submit that the indemnification, contribution, exculpation, reimbursement and other provisions contained in the Engagement Letter, viewed in conjunction with the other terms of Cowen's proposed retention, are reasonable and in the best interests of the Debtors and all other stakeholders. Accordingly, as part of this application, the Debtors request that the Court approve the Engagement Letter.

### Cowen's Disinterestedness

38. To the best of the Debtors' knowledge, based on the information provided to them by Cowen through the Beers Declaration, and except to the extent disclosed herein and in the Beers Declaration: (i) Cowen is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, and as required by section 328(c) of the Bankruptcy Code, and does not hold or represent an interest materially adverse to the interests of the Debtors or the Debtors' estates; (ii) Cowen has no connection to the Debtors, their creditors or other parties in interest in these chapter 11 cases; (iii) Cowen is not and was not, within two years prior to the Petition Date, a director, officer, or employee of any of the Debtors; and (iv) Cowen is not a creditor of the Debtors estates and Cowen did not receive any transfers from the Debtors in the 90 days immediately preceding the Petition Date. In addition, none of the Cowen professionals expected to assist the Debtors in these chapter 11 cases are related or connected to any United

States Bankruptcy Judge for the District of Delaware, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

39. As set forth in further detail in the Beers Declaration, Cowen has certain connections with creditors and other parties in interest in these chapter 11 cases. All of these matters, however, are unrelated to these chapter 11 cases. The Debtors and Cowen do not believe that any of these matters represent an interest materially adverse to the interests of unsecured creditors or otherwise create a conflict of interest regarding the Debtors or these chapter 11 cases.

40. To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Cowen's retention are discovered or arise, Cowen will use reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## **NOTICE**

41. The Debtors are serving copies of this application and notice of the hearing thereon on: (i) counsel to the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to Paxion Capital LP, the Debtors' debtor-in-possession lender; and (iv) all other parties that have requested service of papers filed in these cases. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court (i) grant this application and the relief requested herein; (ii) enter the proposed order attached hereto as **Exhibit A**; and (iii) grant such other and further relief as it deems just and proper.

Dated: November 26, 2019

*/s/ Jeff Nerland*
Jeff Nerland
Chief Restructuring Officer